IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-0819-12






ROBERT RANDALL KRAUSE, Appellant



v.



THE STATE OF TEXAS





ON STATE'S PETITION FOR DISCRETIONARY REVIEW


FROM THE FOURTEENTH COURT OF APPEALS


HARRIS COUNTY





 Alcala, J., filed a concurring opinion.


CONCURRING OPINION


 I join the majority opinion. I agree that this Court must reverse the judgment of the
court of appeals and remand the case of Robert Randall Krause, appellant. I write separately,
however, to explain (1) why statutory provisions outside of the Transportation Code should
not apply in deciding the meaning of a term used within the Transportation Code, and (2)
why I believe that the better practice for this Court would be to clearly set forth a more black-and-white rule that would be more understandable for police officers and trial courts with
respect to phlebotomists.

I. Comparison of Transportation Code and Health and Safety Code

 It is clear that Rachel Lopez, the person who drew appellant's blood, was a "qualified
technician" within the ordinary meaning of that term. She was hired by the hospital where
she had worked for six years and where her duties were limited to drawing blood. She drew
50 to 100 blood samples each day there. She had also completed one semester of coursework
at San Jacinto College North, a local community college. This coursework, combined with
her practical experience at the hospital, qualified Lopez to conduct a variety of medical
procedures, including blood draws, cardiopulmonary resuscitation, electrocardiograms,
intravenous therapy, intubation, and tracheotomies. It would seem irrational to say that she
was a not "qualified technician" as that term is ordinarily understood.

 The disposition of this appeal rests on the Legislature's intent to exclude someone like
her from drawing blood when she was acting as "emergency medical services personnel."
See Tex. Transp. Code § 724.017. Section 724.017 of the Texas Transportation Code states,
"Only a physician, qualified technician, chemist, registered professional nurse, or licensed
vocational nurse may take a blood specimen . . . ." Id. It also provides that "qualified
technician" does not include "emergency medical services personnel." Id. "Emergency
medical services personnel" is not defined in the Transportation Code. See id. That term is
defined, however, in the Texas Health and Safety Code, which states, "In this chapter: . . .
'[e]mergency medical services personnel' means: . . . emergency medical
technicians-intermediate," which we refer to as "EMT-I." Tex. Health & Safety Code 

§ 773.003(10)(C). If the definition in the Texas Health and Safety Code applies to the
Transportation Code, then Lopez must be deemed unqualified. If that definition does not
apply, then this Court must determine what the term "emergency medical services personnel"
does mean. See Tex. Transp. Code § 724.017. I conclude that the definition of EMT-I
plainly does not apply to the Transportation Code because it expressly applies only to that
term as used "in this chapter" of the Health and Safety Code, and nothing in Section 724.017
of the Transportation Code incorporates that definition. See Tex. Health & Safety Code
§ 773.003(10)(C); Tex. Transp. Code § 724.017. 

 Furthermore, it does not appear that the Legislature would have intended that the
EMT-I definition apply to Lopez's employment with the hospital because the EMT-I license
applies to emergency pre-hospital care, and she was not employed or functioning in that
capacity when she drew appellant's blood during the course of her employment at the
hospital. The Texas Health and Safety Code sets forth the qualifications for an EMT-I as
follows: 

 An individual qualifies as an emergency medical technician-intermediate if the
individual is certified by the department as minimally proficient to provide
emergency prehospital care by initiating under medical supervision certain
procedures, including intravenous therapy and endotracheal or esophageal
intubation.


Tex. Health & Safety Code § 773.048. The EMT-I license, therefore, indicates that Lopez
had met the minimal qualifications to be proficient in "emergency prehospital care." Id. Her
employment inside the hospital, however, was not as "emergency prehospital care." She was
in the hospital's emergency room and not "prehospital." Her license, therefore, qualifies her
to perform certain procedures that are performed during "emergency prehospital care," but
it does not speak to whether, when she drew appellant's blood, she was acting in the capacity
of "emergency medical services personnel" under the Transportation Code. See Tex.
Transp. Code § 724.017. If we were to conclude that her license as an EMT-I forever made
her "emergency medical services personnel" as that term is used under the Transportation
Code, it would permanently exclude her from performing those services, despite her
qualifications and regardless of whether she was in an emergency setting, like an ambulance,
or a non-emergency setting, like a doctor's office. Her license, therefore, provides a basis
only to conclude that Lopez has met some minimum qualifications and not that she was
acting as "emergency medical services personnel" when she drew appellant's blood. I
conclude that the type of license held by the person drawing a defendant's blood does not
resolve the question whether the person was "emergency medical services personnel."

II. Black-and-White Rule for Blood Draws Is Preferable

 I join the majority opinion to the extent that it holds that Lopez "did not function as
emergency services personnel" because what she "actually did at the hospital" was "almost
exclusively drawing blood," and, from the perspective of the hospital, she was not treated as
"emergency medical services personnel." But I would go even further and expressly hold
that, in examining the functions of the phlebotomist, (1) evidence of blood draws taken in
a pre-hospital, non-office settings will not, in general, be permitted because individuals in
those settings typically are firefighters or ambulance workers who are "emergency medical
services personnel," and (2) blood draws in hospital-office settings, like those typically
conducted by Lopez unless she was called to another location, are generally favored because
they occur outside of the emergency room in rooms specially designated for the specific
purpose of drawing blood by the phlebotomist of the hospital. I would also caution police
officers and trial courts that it is unclear whether someone who is employed by the hospital
in one capacity, like Lopez who is the phlebotomist assigned to draw blood, may become
"emergency medical services personnel" if she is providing emergency services. Here,
according to the trial court's findings of fact and conclusions of law, Lopez had "duties in
the LBJ Hospital emergency room," as well as duties outside of the emergency room. It is
not difficult to envision a time when she would be functioning as part of the hospital's
"emergency medical services personnel" who are providing emergency care to patients. In
my view, the majority opinion leaves unanswered the question of whether, in examining the
functions of an employee, a court must also consider what the employee was actually doing
when the officer asked for the blood draw. Here, nothing in the record suggests that Lopez
was providing emergency services or even that the blood draw occurred in the emergency
room. In this case, she was clearly functioning in a non-emergency situation, and the record
suggests that the blood draw occurred outside of the hospital's emergency room. Because of
the potential difficulty this Court may face in attempting to characterize the function of a
phlebotomist who is drawing blood in an emergency room, the better practice would be for
blood draws to occur in an office within the hospital rather than in the emergency room.

 With these comments, I join the majority opinion.

 Alcala, J.


Filed: May 8, 2013

Publish